# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DORIS FOUSHEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | )    1:13CV815 |
| | ) |
| CAROLYN COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doris Foushee brought this action pursuant to 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance under Title II of the Social Security Act. Doc. #1. The administrative record was certified to the Court for review.[1] Plaintiff filed a Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, Doc. #9, and Defendant filed a Motion for Judgment on the Pleadings, Doc.

---

[1] All references to the administrative record are noted as "A.R."

#14. On November 18, 2014, a hearing was held on the parties' motions.[2]
For the reasons explained below, Plaintiff's Motion for Judgment Reversing
or Modifying the Decision of the Commissioner of Social Security is
DENIED, and Defendant's Motion for Judgment on the Pleadings is
GRANTED.

I.

Plaintiff filed a Title II application for a period of disability and
disability insurance benefits on May 4, 2010, with an alleged onset date of
April 7, 2010. (A.R. 47-48.) The claim was denied initially and upon
reconsideration. (Id. at 57, 69-70.) On May 10, 2012, a video hearing was
held, at which Plaintiff was represented by counsel and she and a
vocational expert testified. (Id. at 25-47.) In his decision dated June 20,
2012, the Administrative Law Judge ("ALJ") found Plaintiff not disabled.
(Id. at 20.) Plaintiff alleges that (1) the ALJ committed reversible error by
failing to give controlling weight to the opinion of Plaintiff's treating
opthalmologist, Dr. Kelly Muir,[3] (2) the ALJ committed reversible error by

---

[2]All references to attorney assertions or argument during the hearing before this Court are referred to as "Tr."

[3]Although Plaintiff broadly describes the ALJ's alleged error as having "failed to give controlling weight to the opinion of the Claimant's treating opthalmologist," Plaintiff's argument focuses on Dr. Muir's response to

2

relying on vocational expert testimony which was not based on a consideration of all relevant evidence of record on Plaintiff's impairments, (3) substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of successfully adjusting to other work that exists in the national economy in significant numbers, and (4) the ALJ committed reversible error when he ignored and failed to consider evidence of another agency's disability determination. Doc. #9. Substantial evidence supports the ALJ's decision, and, thus, there is no error.

II.

This Court's review of the Commissioner of Social Security's decision that Plaintiff is not disabled is limited to determining whether the ALJ's findings are supported by substantial evidence and whether he applied the correct law. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted). This Court does not reweigh evidence

---

Question 10 of the Vision Impairment: Residual Functional Capacity Questionnaire ("Vision RFC Questionnaire") and the ALJ's alleged rejection of that response. Pl.'s Br. in Support of Pl.'s Mtn. at 4-10 (Doc. #10).

3

or make credibility determinations. Id.

Plaintiff first alleges that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating opthalmologist, Dr. Muir. "Generally," the ALJ gives "more weight" to the opinions of treating physicians, such as Dr. Muir. 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion on the issues of the nature and severity of impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with other substantial evidence, the ALJ gives the opinion "controlling weight." Id. When the ALJ does not give the treating physician's opinion controlling weight, he examines factors in 20 C.F.R. § 404.1527(c)(2)(i)-(ii) and (c)(3)-(6) to determine the weight to afford the opinion. Id.

The ALJ found as part of Plaintiff's Residual Functional Capacity ("RFC") that she "has a visual impairment that would limit her to gross type vision, for example, not having to pay attention to fine detail and small print." (A.R. 16.) As part of his analysis to determine Plaintiff's RFC, the ALJ explained that Plaintiff has glaucoma, 20/20 corrected visual acuity in her right eye, and light perception only in the left eye as Dr. Muir noted on the Visual RFC Questionnaire. (Id. at 18.) The ALJ recognized that Dr. Muir

4

believed that Plaintiff's right eye is normal, but she would be restricted in all visual work activities such as near and far acuity in her left eye. (Id. at 18-19.) The ALJ "generally" agreed with Dr. Muir's opinion. (Id. at 19.) However, he found Dr. Muir's "conclusions regarding [Plaintiff's] exertional limitations, postural limitations, and environmental limitations[4] inconsistent with the weight of the medical evidence." (Id.) The ALJ explained that

> limiting [Plaintiff] to activities that do not involve focusing on fine detail or small print fully encompasses her limitations secondary to her left eye visual limitations. She has 20/20 vision in her right eye and is limited to primarily sitting jobs. Accordingly, [there is] no need for additional environmental limitations. Furthermore, . . . visual limitations would not preclude the performance of postural activities.

(Id.)

According to the evidence before the ALJ, Dr. Muir treated Plaintiff from September 2009 to June 2010 and July 2011 to December 2011, for a total of approximately ten appointments. (Id. at Exs. 12F-14F.) Medical records evidence, among other things, Plaintiff's history of glaucoma with corneal grafts. (See, e.g., id. at Ex. 3F.) On April 10, 2012, Dr. Muir completed the Vision RFC Questionnaire, (id. at Ex. 14F), at the request of Plaintiff's counsel, Tr. 38:22-23. With respect to Plaintiff's left eye, Dr.

---

[4] Postural and environmental limitations, as well as visual limitations, are considered nonexertional limitations. SSR 96-9p.

5

Muir noted, among other things, that Plaintiff's left eye visual acuity is limited to light perception only and that Plaintiff can never perform work activities involving near acuity, far acuity, depth perception, accommodation, color vision, or field of vision. (A.R. Ex. 14F (Questions 5, 8.a.).)

Dr. Muir was also asked the following question, "Will your patient sometimes need to take unscheduled breaks during an 8-hour working day?" to which she was to respond by checking a box for "Yes" or "No." (Id. at Ex. 14F (Question 10).) Dr. Muir checked "Yes." Although the Vision RFC Questionnaire defines "rarely," "occasionally," and "frequently," it does not define "sometimes." Question 10 affords no room for Dr. Muir to expound upon her answer, nor did Dr. Muir choose to do so on her own. Consequently, it is unclear what Dr. Muir opined. As Plaintiff's counsel conceded at the hearing, the question does not ask Dr. Muir if Plaintiff would sometimes need to take unscheduled breaks during each 8-hour working day. Tr. 40:14-18 (emphasis added). Likewise, Plaintiff's counsel conceded that sometimes could be once a month or once every six months. Id. at 40:19-22. In other words, Dr. Muir's answer to Question 10 of the Vision RFC Questionnaire is vague.

Plaintiff contends that her own testimony before the ALJ – that she has to rest her eyes anywhere from eight to twelve times a day for fifteen to thirty minutes at a time (A.R. 33) – supports Dr. Muir's opinion. Tr. 40:23-41:4. However, it is unclear what Dr. Muir's opinion as to Plaintiff's need for breaks really is. See, e.g., Tr. 41:17-22 (Plaintiff's Counsel: "I don't know why the claimant's testimony, especially if it is supportive of the opinion of the treating physician, doesn't help in that situation." The Court: "You don't know whether it is supportive or not. Dr. Muir could have said one time every six months." Plaintiff's Counsel: "Correct.") Furthermore, a review of Plaintiff's medical records, including records from Dr. Muir, Plaintiff's primary care physicians, Plaintiff's orthopaedic physicians, and hospital admissions reveals no indication that Plaintiff would require unscheduled breaks during an 8-hour working day and, therefore, no explanation as to how frequently or how long those breaks would need to be. (See A.R. Exs. 1F-19F.)

Dr. Muir's vague and unsupported response to Question 10 on the Vision RFC Questionnaire is weak evidence of Plaintiff's alleged requirement for unscheduled breaks. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion,

particularly medical signs and laboratory findings, . . . [and] [t]he better an explanation a source provides for an opinion, the more weight" is afforded to that opinion.). Cf. Lawson v. Colvin, No. 7:13-cv-260, 2014 WL 1870853, *6 (W.D.Va. May 8, 2014) (distinguishing Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993) (finding form report requiring physician to check box or fill in blank was weak evidence) because, unlike in Mason, Lawson's treating physician's own examination notes and other physicians' treatment notes supported the treating physician's answers in the form report which should have been afforded controlling weight). Dr. Muir's purported opinion expressed in her response to Question 10 can hardly be considered an opinion for purposes of determining Plaintiff's vision residual functional capacity. There simply is not enough information in the question propounded to Dr. Muir or Dr. Muir's response to constitute an opinion of Plaintiff's limitations, and neither Dr. Muir's treatment notes nor any other medical records reveal the meaning that Dr. Muir attributed to the question or her answer. As such, the ALJ did not err in failing to afford controlling weight to Dr. Muir's response to Question 10.

At the hearing, Plaintiff's counsel suggested that the ALJ should have contacted Dr. Muir to follow up on her response to Question 10. E.g., Tr.

43:11-19, 44:6-9, 44:18-22.  Although a claimant has a duty to furnish all relevant medical evidence and to carry the burden of proving that she is disabled, an ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make" a determination of disability. 20 C.F.R. § 404.1512(a); 42 U.S.C. § 423(d)(5)(B).  A regulation in effect at the time Plaintiff applied for disability on May 4, 2010, and, therefore binding on the ALJ, required that the ALJ re-contact a claimant's treating physician where information from the treating physician is inadequate to determine disability. 20 C.F.R. § 404.1512(e)(1) (effective Aug. 1, 2006 to Nov. 11, 2010).  However, that duty "arises only when the evidence as a whole is inadequate to determine the issue of disability." Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011).  Furthermore, "'[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation.'" McGlothlen v. Astrue, No. 7:11-CV-148-RJ, 2012 WL 3647411, *5 (E.D.N.C. Aug. 23, 2012) (quoting Maes v. Astrue, 522 F.3d 1093, 1097

(10th Cir. 2008)). See also id. (quoting Clark v. Shalala, 28 F.3d 828, 830 (8th Cir. 1994) for the proposition that "[w]hile 'the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's substitute counsel'").

At the hearing before this Court, Plaintiff's counsel acknowledged that his office not only prepared the Visual RFC Questionnaire at issue, but received Dr. Muir's completed Visual RFC Questionnaire dated April 11, 2012, and had the opportunity to review it prior to submitting it to the ALJ. Tr. 39:2-14, 47:7-20. At the hearing before the ALJ, the ALJ identified the exhibits Plaintiff submitted prior to the hearing (Exhibits 1A through 17F[5]) and asked if there was "[a]nything additional by the way of written evidence that you haven't already submitted that you may add to the written record" to which Plaintiff's counsel responded "No." (A.R. 28.) Furthermore, when the ALJ asked Plaintiff's counsel if she[6] had any additional questions for Plaintiff, her counsel responded, "Not at this time"

---

[5]Also included as part of the administrative records are Exhibits 18F and 19F, which Plaintiff submitted to the Appeals Council. (A.R. 4.)

[6]Plaintiff had different counsel at the hearing before the ALJ and the hearing before this Court.

10

and did not thereafter ask any of Plaintiff. (Id. at 41.)  Likewise, after the ALJ questioned the vocational expert, he asked Plaintiff's counsel if she had any questions, to which she responded "No." (Id. at 45.)  The ALJ explained that "if [there were] nothing further," he would issue a written decision, to which Plaintiff's counsel stated, "Thank you, your honor." (Id.)

Prior to making his decision, the ALJ had before him approximately two years of treating opthalmologists' records among years of records from primary care physicians, orthopaedists, and hospitals. (See id. at Exs. 1F-17F.)  In his decision, the ALJ explained that he came to Plaintiff's RFC and his decision that Plaintiff was not disabled "[a]fter careful consideration of all the evidence," (id. at 11, 16, 17), including the approximately two years of medical records from Dr. Muir and opthalmologists who treated Plaintiff prior to Dr. Muir, years of records from hospital admissions and orthopaedists, the vocational expert's testimony, and Plaintiff's testimony. The ALJ fulfilled his obligation under 42 U.S.C. § 423(d)(5)(B) to "make every reasonable effort to obtain from [Dr. Muir] all medical evidence . . . necessary in order to properly make" a disability determination.  Dr. Muir's one-word answer to a vague question does not make the evidence as a whole before the ALJ inadequate.  Furthermore, the ALJ adequately

11

explained, although not to Plaintiff's liking, the weight he gave Dr. Muir's opinion and his supporting reasons. Therefore, substantial evidence supports the ALJ's weighing of Dr. Muir's opinion.

III.

Plaintiff next alleges that the ALJ erred by relying on vocational expert testimony which was not based on a consideration of all relevant evidence on record of Plaintiff's impairments. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Here, substantial evidence supports the ALJ's reliance on the vocational expert's testimony.

The ALJ asked the vocational expert two hypothetical questions: the first question did not include a limitation requiring unscheduled breaks during an eight-hour working day and the second question did include such a limitation. Specifically, as part of the first hypothetical question, the ALJ stated

> I'd like you to further assume that I find that she does have the age, the education and the vocational background as that is said

12

> in the record, . . . I'd like you to further assume that I find that
> she does have a visual impairment. I'd like you to assume for
> purposes of this question that due to the visual impairment she
> would have the need to use [INAUDIBLE]. In other words, not
> have to pay attention to real fine detail, small print or any of
> those kinds of things, and further that she has a leg problem
> that does give her some pain. She's had surgery on her leg, and
> because of the leg problem, she would have the need to sit
> most of the time, but could do some occasional standing and
> short distance walking. That lifting should be limited to about
> 10 pounds or less. If I found these — and the pain overall
> would not, if she stays within these limitations, would not exist
> to the extent that it interfered with her concentration.

(A.R. 43.) In response, the vocational expert testified that Plaintiff could not return to her previous work, but that she could perform other work that exists in the economy. (Id. at 43-44.) In the second hypothetical, the ALJ stated

> I'd like to assume all of the same factors I gave you just in this
> first question, but in this question I'd like for you to assume that
> her visual impairment would exist as I describe, but that her
> vision after at least two to three hours of activity would become
> blurred and she would have the need to rest her eyes for at
> least 25 to 30 minutes before she continued even with gross
> [INAUDIBLE].

(Id. at 44.) In response, the vocational expert testified that there are no jobs that Plaintiff could perform. (Id. at 44-45.) The vocational expert's opinions were based on the evidence on record and in response to two hypothetical questions which set out Plaintiff's alleged limitations. Even

13

Plaintiff conceded that the first hypothetical is "for all practical purposes, identical to the RFC [the ALJ] adopted in his hearing decision." Pl.'s Br. in Support of Mtn. at 12-13. As explained above, substantial evidence supports the ALJ's weighing of Dr. Muir's opinion concerning Plaintiff's need for unscheduled breaks (as well as Plaintiff's testimony about the same) and his ultimate conclusion not to include that limitation in Plaintiff's RFC. Therefore, substantial evidence also supports the ALJ's reliance on the testimony of the vocational expert in response to the first hypothetical which paralleled Plaintiff's RFC.

IV.

Plaintiff alleges that substantial evidence does not support the ALJ's conclusion that Plaintiff is capable of successfully adjusting to other work that exists in the national economy in significant numbers. For the reasons explained in sections II and III, substantial evidence supports the ALJ's conclusion that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. As part of Plaintiff's argument, she argues that her right to a hearing under 20 C.F.R. § 404.950(a) was violated as a result of periodic audio difficulties during the video hearing before the ALJ. For the hearing, the ALJ was located in Greenville, South

14

Carolina, while Plaintiff was in Greensboro, North Carolina. As support for her argument, Plaintiff cites to the number of times "INAUDIBLE" appears in the transcript of the hearing. However, it is apparent from the transcript that the ALJ had Plaintiff repeat the portions of her testimony that the ALJ did not apparently clearly hear and that the ALJ himself accurately summarized some of Plaintiff's testimony concerning her visual limitations in his questioning of Plaintiff and the vocational expert. (Id. at 33-35, 40, 44.) Plaintiff was not prejudiced by any audio difficulties nor was her right to a hearing violated.

V.

Plaintiff alleges that the ALJ committed reversible error when he ignored and failed to consider evidence of another agency's disability determination. Plaintiff settled a workers' compensation claim on April 2, 2011, and the settlement was approved by the North Carolina Industrial Commission. (Id. at 121-133.) According to Plaintiff, the North Carolina Industrial Commission is a state agency that administers the North Carolina Workers' Compensation Act, and, as such, "[t]he disability determination of [the North Carolina Industrial Commission] is entitled to consideration in an SSA disability proceeding." Bird v. Comm'r of Social Sec. Admin., 699 F.3d

337, 343 (4th Cir. 2012) (involving a disability determination by the Department of Veterans Affairs).

Plaintiff's workers' compensation claim centered around an injury Plaintiff sustained to her left knee. (Id. at 121-129.) Plaintiff acknowledged that the RFC adequately reflects her knee impairment and limitations. Pl.'s Br. in Support of Mtn. at 6. In addition, the workers' compensation settlement noted that one of Plaintiff's orthopaedic physicians assigned a rating to her left leg when she reached maximum medical improvement. (Id. at 124.) But, the settlement did not make a finding as to the nature and severity of Plaintiff's limitations nor did it conclude that Plaintiff was disabled and unable to engage in substantial gainful activity.

In addition, the workers' compensation settlement and North Carolina Industrial Commission approval of the settlement were part of the record before the ALJ. (See id. at Ex. 5D & 27-28 (noting the ALJ's recognition of Exhibits 1A through 17F and admitting them into evidence).) The ALJ made his decision "[a]fter consideration of all the evidence," and determined Plaintiff's RFC "[a]fter careful consideration of the entire record." (Id. at 11, 16, 17.) Although the ALJ "is required to consider all record evidence relevant to a disability determination," Bird, 699 F.3d at 343, he is not

required to discuss every piece of evidence he considers, Hunter v. Colvin, No. 1:10-CV-401, 2013 WL 2122575, *4 (M.D.N.C. May 15, 2013). Because the ALJ stated that he considered all of the evidence of record, which included the workers' compensation settlement and that evidence would have little, if any, bearing on the disability determination, Plaintiff's argument on this issue lacks merit.

VI.

For the reasons set forth above, Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, Doc. #9, is **DENIED**, and Defendant's Motion for Judgment on the Pleadings, Doc. #14, is **GRANTED**.

This the 3rd day of December, 2014.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge